A00A0835. GRIFFITH v. MEDICAL RENTAL SUPPLY OF ALBANY, GEORGIA, INC.

(534 SE2d 859)

BLACKBURN, Presiding Judge.

In this action regarding the alleged breach of an implied warranty of merchantability (OCGA § 11-2A-212) and an implied warranty of fitness for a particular purpose (OCGA § 11-2A-213) concerning an air mattress and pump, Earl Griffith, in his individual capacity and as executor of the last will and testament of Alice Griffith, his deceased wife, appeals the trial court's grant of a directed verdict to Medical Rental Supply of Albany, Georgia, Inc. (MRS). Specifically, Griffith contends that the mattress he rented from MRS caused his bedridden wife to develop bedsores. For the reasons set forth below, we affirm the trial court's decision.

> A directed verdict is proper only if there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict. OCGA § 9-11-50 (a). In determining whether any conflict in the evidence exists, the court must construe the evidence most favorably to the party opposing the motion for directed verdict. The standard used to review the grant or denial of a directed verdict is the any evidence test.

*Evans Timber Co. v. Central of Ga. R. Co.,* 239 Ga. App. 262 (1) (519 SE2d 706) (1999).

Viewed in this light, the evidence at trial showed that Alice Grif-

---

[6] See *J. P.,* supra, 160 Ga. App. at 897; *D. O. D.,* supra, 156 Ga. App. at 303; see generally OCGA § 24-4-6.

[7] See *D. O. D.,* supra, 156 Ga. App. at 302.

fith suffered a stroke in 1989, leaving her bedridden. At that time, Alice Griffith's doctor prescribed a specific mattress for her use, and Earl Griffith rented one from MRS. Then, in 1995, Earl Griffith suggested to his wife's doctor that she might be more comfortable on a different type of mattress, and the doctor wrote a new prescription to honor Earl Griffith's request. Again, Earl Griffith rented the prescribed mattress from MRS. MRS had no input whatsoever in the choice of the mattress.

Sometime after the new mattress was put into use, Alice Griffith began developing bedsores, which ultimately required corrective surgery. When Earl Griffith complained about the mattress to MRS, they attempted to replace it with a new mattress of the same type. When an appropriate replacement could not be found, Earl Griffith requested a mattress like the one he had originally rented in 1985, and MRS complied with his request. At that point, Alice Griffith's problems with bedsores subsided.

The Griffiths subsequently filed suit against MRS, contending that MRS rented the second mattress to them knowing that it was intended to prevent bedsores; the mattress was defective; and, as such, MRS breached an implied warranty of merchantability and an implied warranty of fitness for prevention of bedsores with regard to the mattress. Although the Griffiths also made claims against MRS for breach of contract and general negligence, they make no arguments regarding these claims on appeal, thereby waiving their review. See Court of Appeals Rule 27. Accordingly, we consider only the remaining claim based on the law of implied warranties.

Griffith first contends that MRS breached an implied warranty of merchantability by renting him a defective mattress. We cannot agree.

OCGA § 11-2A-212 states:

(1) Except in a finance lease, a warranty that the goods will be merchantable is implied in a lease contract if the lessor is a merchant with respect to goods of that kind. (2) Goods to be merchantable must be at least such as: (a) Pass without objection in the trade under the description in the lease agreement; (b) In the case of fungible goods, are of fair average quality within the description; (c) Are fit for the ordinary purposes for which goods of that type are used; (d) Run, within the variation permitted by the lease agreement, of even kind, quality, and quantity within each unit and among all units involved; (e) Are adequately contained, packaged, and labeled as the lease agreement may require; and (f) Conform to any promises or affirmations of fact made on the container or label.

Griffith argues that the second type of mattress rented to him was not fit for its ordinary purpose of preventing bedsores. Although a manager for MRS testified that one of the purposes of the mattress in question was to prevent bedsores, he further testified that, at the time the mattress was delivered on February 28, 1995, it was working properly. Griffith also testified that, at the time the mattress was delivered, he could feel the "top roll" of the inflatable mattress functioning. Griffith did not contact MRS until seven months after the delivery of the second mattress to complain that it was not working properly.

Here, Griffith has failed to provide any evidence that the mattress was not working when he received it. "As is the case under strict tort liability, the product defect must exist at the time of sale or lease for an action under warranty to be valid." *Jenkins v. Gen. Motors Corp.*, 240 Ga. App. 636, 638 (5) (524 SE2d 324) (1999). Therefore, Griffith's claim based on an implied warranty of merchantability is untenable.

Likewise, Griffith's claim for a breach of an implied warranty of fitness for a particular purpose is not viable. OCGA § 11-2A-213 provides:

> Except in a finance lease, if the lessor at the time the lease contract is made has reason to know of any particular purpose for which the goods are required and that *the lessee is relying on the lessor's skill or judgment to select or furnish suitable goods*, there is in the lease contract an implied warranty that the goods will be fit for that purpose.

(Emphasis supplied.)

In this case, it is clear that the Griffiths were relying on the skill of Alice Griffith's doctors, not MRS, in selecting the appropriate mattress. Each brand of mattress Alice Griffith received was prescribed by her doctors, and MRS merely filled these prescriptions. There is no evidence in the record that MRS had any role in the choice of mattress. Moreover, the original mattress, which Earl Griffith contends worked properly, was ultimately replaced at his request. Therefore, as there is no evidence whatsoever that the Griffiths relied on the skill and judgment of anyone other than Alice Griffith's doctors in choosing the brand of her mattresses, Griffith's claim against MRS for a breach of an implied warranty of fitness for a particular purpose is legally untenable. Accordingly, the trial court appropriately granted MRS' motion for a directed verdict.

*Judgment affirmed. Eldridge and Barnes, JJ., concur.*

DECIDED MAY 19, 2000.

*Mills & Chasteen, Ben B. Mills, Jr.,* for appellant.
*Farkas & Ledford, Leonard Farkas,* for appellee.