A04A1411. McDONALD v. MAZDA MOTORS OF AMERICA, INC.
(603 SE2d 456)

ELDRIDGE, Judge.

Mark McDonald appeals from the grant of summary judgment on his action for breach of warranties under the Magnuson-Moss Warranty Act, which are in fact state warranty claims, against Mazda Motors of America, Inc. for unrepaired defects to his new 2002 Mazda Protege over the first 17 months of ownership. On de novo review, we find disputed issues of material fact on the theories of liability

---

appealed and reverse the grant of summary judgment by the trial court for trial by jury on the issues of breach of warranty, express and implied.

On August 31, 2001, McDonald purchased a new 2002 Mazda Protege from a Mazda Motors of America authorized dealership. Mazda provided a written warranty that promised to repair defects in materials or in workmanship in the vehicle for 36 months or 50,000 miles, whichever first occurred, and the alleged breach of warranties occurred within such conditions. Almost immediately after purchase, the vehicle developed a loud rattling noise under the engine and transmission. On November 3, 2001, McDonald took the vehicle for repair of such possible defects to an authorized Mazda dealer; the dealer kept the vehicle for three and one-half weeks in order to repair it, from November 3 to November 28. The authorized Mazda repair technician verified the existence of the conditions and wrote up the repair order: "Mazda is aware of concern, spoke with tech line, I have ref #, no repair available at this time." The vehicle was returned to McDonald unrepaired with the alleged defects still present.

In early January, McDonald again contacted the same manufacturer's authorized repair facility, and he advised them that the rattling noise continued and that the vehicle's engine was "running rough"; Vance, a technician there, told McDonald that no repair was available to fix the condition.

On January 24, 2002, McDonald took the vehicle to the repair center and advised them that the vehicle was "running rough" and making the rattling noise. The technician wrote up the repair order, stating, "the customer has kept up to date on info from Mazda as soon as two weeks ago by Vance, and was advised that there is still no repairs available; . . . engineer still working on a fix at this time; . . . we are advised not to make . . . any . . . repair attempts. All controls are computer controlled. No adjustments can be made. No correction can be made at this time." No repair was made, and the vehicle was returned to McDonald again in the same unrepaired condition with the alleged defects.

On April 11, 2002, McDonald gave written notice to Mazda of the unrepaired defects and of the breach of warranty in the unreasonable delay in making or attempting to make repairs. On May 22, 2002, McDonald filed this lawsuit.

The alleged problems continued for months, even after suit. Finally, on March 23, 2003, the authorized repair facility attempted to fix the vehicle. The technician replaced the VTCS delay valve and recalibrated the PCM with updates per Mazda Technical Bulletin #01-004/03.

Mazda moved for summary judgment, which motion raised issues as to the Lemon Law only; however, the trial court granted

summary judgment both as to the Lemon Law claim and as to warranties under the Magnuson-Moss Warranty Act claims, i.e., state warranty claims. McDonald appeals only from the grant of summary judgment as to the Magnuson-Moss claims for breach of warranty under Georgia law and not as to the Georgia Lemon Law claims.

The Magnuson-Moss Warranty Act creates no claims except for attorney fees and relies upon state law to create and define implied warranties, breach, and some kinds of damages; the Act limits the content of written disclaimers and allows certain remedies and damages not available under state law. See generally *Freeman v. Hubco Leasing*, 253 Ga. 698, 703 (2), 705-706 (4) (324 SE2d 462) (1985) (damages for attorney fees and limited disclaimer of written and implied warranties arising under Georgia law); *Dildine v. Town & Country Truck Sales*, 259 Ga. App. 732, 734 (577 SE2d 882) (2003) (breach of implied warranty arises under state law — 15 USC § 2301 (7)); *Sharpe v. Gen. Motors Corp.*, 198 Ga. App. 313, 314 (3) (401 SE2d 328) (1991) (provides damages for breach of warranty under state law); *Ryals v. Billy Poppell, Inc.*, 192 Ga. App. 787, 788 (386 SE2d 513) (1989) (15 USC § 2311 (b) action for personal injury arises under state law). Therefore, we will look to Georgia warranty law, except where the Magnuson-Moss Warranty Act requires a different result, which is not necessary under the facts of this case.

1. McDonald contends that the trial court erred in granting summary judgment as to the written warranty. We agree.

The trial court ruled that McDonald failed to produce evidence that Mazda failed or refused to repair the vehicle in that there was no repair remedy available. Obviously, if there is no repair remedy for a defect, then there will be a breach of warranty, because the product is not merchantable with an unrepairable defect. The trial court misconstrued the evidence and the law. On November 3, 2001, McDonald took the vehicle for repair; the vehicle was kept to make repairs for three and one-half weeks without repair or attempt to repair; and the vehicle was returned with the notation "Mazda is aware of concern . . . no repair available at this time." After what a jury may find to be an unreasonable time to make repairs, the vehicle was returned unrepaired; this raises a jury question whether there was a failure to make repairs or a refusal to make repairs by Mazda, which could be found to constitute a breach of the express warranty on the first delivery of the vehicle for repairs. In January 2002, McDonald was told on two occasions that Mazda could not repair the vehicle and that the technicians were expressly ordered by Mazda not to attempt any repairs. Such failure or refusal to attempt repair raises a jury issue as whether such conduct constituted a breach of express warranty after two deliveries for repair with no repair or attempt to repair.

Finally, on March 23, 2003, long after suit was instituted and nearly 17 months after purchase, Mazda authorized an attempt to fix the vehicle for the first time. Such facts create a jury question as to whether Mazda failed to repair the vehicle or refused to repair the vehicle previously and whether the lack of a repair remedy for 17 months constituted a breach of the express warranty.

On March 23, 2003, the replacement of the VTCS delay valve and recalibration of the PCM raise reasonable inferences that the rattling noise and "running rough" engine, which persisted for months, constituted the defect or defects that existed from the purchase date unrepaired or with no attempt to repair. The inability for months to devise a repair strategy or repair solution by the manufacturer's engineering department raises a reasonable inference by which a jury may find defects that were either a manufacturing defect or a design defect, which existed from the time of manufacture.

(a) When a defect in the product exists, the manufacturer and seller are liable strictly in warranty, without evidence of fault or knowledge, where the breach of warranty conditions are satisfied. OCGA § 11-2-314; *John Deere Co. v. Lindsey Landclearing Co.*, 122 Ga. App. 827, 831 (2) (178 SE2d 917) (1970); accord *Pierce v. Liberty Furniture Co.*, 141 Ga. App. 175, 176 (3) (233 SE2d 33) (1977) (superseded by statute). The purpose of warranty statutes is "that the enterprise which causes losses should lift them from the individual victims and distribute them widely among those who benefit from the activities of the enterprise. . . . This would include strict liability on the part of the manufacturer upon an implied warranty [as to defects] lurking in any kind of product." (Citations and punctuation omitted.) *Wood v. Hub Motor Co.*, 110 Ga. App. 101, 105 (137 SE2d 674) (1964); see also *Firestone Tire &c. Co. v. Jackson Transp. Co.*, 126 Ga. App. 471, 474-475 (1) (191 SE2d 110) (1972).

When there is a written warranty that includes repair or replacement of parts, two conditions of the warranty are notice of the defect and a reasonable opportunity to repair the defect before a breach of warranty can exist. OCGA §§ 11-2-508; 11-2-605; 11-2-607 (3) (a). "These being express provisions and conditions of the warranty, a breach of that warranty would occur only upon [Mazda's] refusal to remedy. . . . [I]t cannot be liable for breach of the warranty attaching to the vehicle [until it has a reasonable opportunity to repair]." *DeLoach v. Gen. Motors*, 187 Ga. App. 159, 160 (3) (369 SE2d 484) (1988); see also *Ford Motor Co. v. Gunn*, 123 Ga. App. 550, 551 (1) (181 SE2d 694) (1971).

> [A] warranty contemplates that the warrantor shall have an opportunity to remedy defects. Thus the warranty is not instantly breached if the car is found on delivery or at some

time thereafter within the warranty period to have a defective part or operational deficiency. The language of the warranty provides that in such event the manufacturer, through its selling dealer or other appointed agency, will replace or repair . . . and do what is necessary to bring the vehicle to normal at no cost to the purchaser. Assuming the purchaser has maintained his vehicle in the manner specified, it is the refusal to remedy within a reasonable time, or a lack of success in the attempts to remedy which would constitute a breach of warranty.

(Emphasis omitted.) Id. at 551; accord *Olson v. Ford Motor Co.*, 258 Ga. App. 848, 851 (2) (575 SE2d 743) (2002). If the defect can be cured, then the purchaser has what he bargained for, i.e., "a product which would pass in the trade," because there has been no breach of warranty. See generally *Freeman v. Hubco Leasing*, supra at 698; *Gen. Motors Corp. v. Green*, 173 Ga. App. 188, 190-191 (1) (325 SE2d 794) (1984); *Patron Aviation v. Teledyne Indus.*, 154 Ga. App. 13, 15-16 (3) (267 SE2d 274) (1980); *Space Leasing Assoc. v. Atlantic Bldg. Systems*, 144 Ga. App. 320, 325 (4) (241 SE2d 438) (1977).

[W]here a warranty offers to replace defects in a motor vehicle, there is no breach of warranty upon which the Plaintiff may recover if the Plaintiff has not given the opportunity, within a reasonable time, to replace or repair the defects under the terms of the warranty. Only when there is a refusal to repair or replace, or there is a lack of success in making repairs or replacement, has breach of warranty occurred.

(Punctuation omitted.) *DeLoach v. Gen. Motors*, supra at 159. When the purchaser returns the product to the dealer and makes the product available for repair, refusal to repair, unsuccessful repair, or repeated failures of the repair constitute a breach of the express warranty. Id. at 159; *Jacobs v. Metro Chrysler-Plymouth*, 125 Ga. App. 462, 465-468 (1), (2) (188 SE2d 250) (1972); *Ford Motor Co. v. Gunn*, supra at 551. The repairs must be made within a reasonable amount of time to avoid being deemed a breach of warranty. *Space Leasing Assoc. v. Atlantic Bldg. Systems*, supra at 320. The defects, which have been noticed to the dealer, cannot be repaired serially, but must be remedied as soon as reasonably practical to avoid a breach of the express warranty. *Ford Motor Co. v. Gunn*, supra at 552. "[I]t is the refusal to remedy within a reasonable time, or lack of success in the attempts to remedy which would constitute a breach of warranty." (Emphasis omitted.) Id. at 551. Where the manufacturer or dealer

has had several opportunities to repair or replace and where the defect remains, such facts create jury questions whether or not there has been a breach of warranty and whether the opportunity to repair was reasonable under the circumstances. *Stephens v. Crittenden Tractor Co.*, 187 Ga. App. 545, 547 (1) (370 SE2d 757) (1988); *Teledyne Indus. v. Patron Aviation*, 161 Ga. App. 596, 598 (2) (288 SE2d 911) (1982); *John Deere Indus. Equip. Co. v. Ponder*, 135 Ga. App. 688, 689 (218 SE2d 686) (1975). "A refusal to repair or an unsuccessful repair is such a breach [of the written warranty]." *Jacobs v. Metro Chrysler-Plymouth*, supra at 467. A jury question arises as to a breach of warranty when there is a refusal to repair or an inability to repair. *Mulkey v. Gen. Motors Corp.*, 164 Ga. App. 752, 753 (1) (299 SE2d 48) (1982). Whether or not 17 months is a reasonable time to repair is a jury question, as is whether the alleged defects have existed from the time of delivery after purchase.

(b) Under the Magnuson-Moss Warranty Act, the Act does not require the giving of warranties. 15 USC § 2302 (a). However, if a warranty is given, then it must be clearly designated either a full or a limited warranty. 15 USC § 2303. If a full warranty is given, then the defect must be remedied within a reasonable time. 15 USC § 2304. Where the dealer refused to repair because the manufacturer has failed to pay for prior warranty work, such refusal constitutes a breach of warranty. 15 USC § 2310 (d) (2); *Freeman v. Hubco Leasing*, supra at 698. Likewise, if the dealer on instructions from the manufacturer makes no repairs or no attempt to repair, because there is no remedy for the defect, then this creates a factual issue as to a breach of the warranty. Id.

(2) McDonald contends that the trial court erred in granting summary judgment on the breach of implied warranty of merchantability. We agree.

Under the Magnuson-Moss Warranty Act, a limited warranty may limit the duration of implied warranties; however, such limitations may not be unconscionable. 15 USC § 2308 (b).

(a) The grant of summary judgment based in whole or in part on the opinion of an expert witness is not appropriate, except in a case or cases where it is the plaintiff's motion or where the plaintiff must rely upon expert opinion to prevail at trial or in professional negligence where the standard of care and deviation from it must be proven by expert testimony, because the weight and credit to be given to the opinion evidence is not for the trial judge but for a jury to decide. See *Savannah Valley &c. Assn. v. Cheek*, 248 Ga. 745, 746 (285 SE2d 689) (1991); *Ginn v. Morgan*, 225 Ga. 192, 193-194 (167 SE2d 393) (1969) (modified by *Savannah Valley &c. Assn.*, supra at 746); see also *Standex Intl. Corp. v. Driver*, 223 Ga. App. 645, 646 (478 SE2d 605) (1996); *Wilson v. Norfolk Southern Corp.*, 200 Ga. App. 523, 526 (409

SE2d 84) (1991); *Fussell v. Jones*, 198 Ga. App. 399, 400-401 (2) (401 SE2d 593) (1991). Breach of implied warranty may be proven without expert testimony to show that a product is defective and that the defect existed from the time of manufacture. The presence or absence of breach of implied warranty from a defect does not mandate expert opinion to win at trial; thus, the grant of summary judgment based upon expert opinion was error.

Mazda presented the affidavit of its expert witness who testified that there was no defect. At the hearing on the motion for summary judgment, the trial court stated that "the only evidence in the record I have is that [the Protege] was not defective by virtue of an expert affidavit, and two that your client was able to drive it." There was direct evidence that gave rise to reasonable inferences that a jury could draw of the presence of defects and that such defects existed from the time of sale. The trial court usurped the function of the jury in determining weight and credibility of the evidence on motion for summary judgment.

(b) A product is defective and breaches the implied warranty of merchantability when it is not "fit for the ordinary purposes for which such goods are used"; such purpose is determined by the manufacturer and not the user. OCGA § 11-2-314; *Poppell v. Waters*, 126 Ga. App. 385, 388 (2) (190 SE2d 815) (1972); *Atlanta Americana &c. Corp. v. Sika Chem. Corp.*, 117 Ga. App. 707, 713 (5) (161 SE2d 342) (1968). When a product leaves the retailer's control in a condition which does not conform to the representations of the warranty of merchantability, such defective condition constitutes evidence of a breach of warranty, which creates a jury question. *Fender v. Colonial Stores*, 138 Ga. App. 31, 32-33 (1) (225 SE2d 691) (1976). To be merchantable, goods must "[p]ass without objection in the trade under contract description." OCGA § 11-2-314 (2) (a); *McCleskey v. Olin Mathieson Chem. Corp.*, 127 Ga. App. 178, 179 (1) (193 SE2d 16) (1972). Thus, the latent defect must exist at the time that the vehicle was sold as an essential element of the claim for breach of implied warranty. *Dildine v. Town & Country Truck Sales*, supra at 734 (1); *Griffith v. Med. Rental Supply &c.*, 244 Ga. App. 120, 122 (534 SE2d 859) (2000); *Jenkins v. Gen. Motors Corp.*, 240 Ga. App. 636, 638 (5) (524 SE2d 324) (1999).

Whether or not there is a latent defect which the purchaser could not discover and whether there exists a breach of implied warranty at the time of purchase, such factual issues create jury questions under the facts of this case. *Jones v. Marcus*, 217 Ga. App. 372, 373 (1) (457 SE2d 271) (1995). Whether or not there is enough evidence for a jury to decide if there is a breach of warranty is generally for a jury to decide. *Gold Kist v. Williams*, 174 Ga. App. 849 (332 SE2d 22) (1985) (with disputed evidence, it is error to direct a verdict).

The evidence of the rattle from near the time of purchase and the engine "running rough" give rise to the reasonable inference that such conditions existed from the time of purchase. This inference is further enhanced by the manufacturer's inability to determine a remedy or repair, which gives rise to the inference that there was a design or manufacturing defect existing from the time of delivery. The later replacement of the VTCS valve and the recalibration of the PCM give rise to the inference that these were the defects that McDonald complained of and which were not fixed until the third return for repairs. Thus, jury issues arise.

*Judgment reversed. Adams, J., concurs. Ruffin, P. J., concurs in judgment only.*

DECIDED AUGUST 10, 2004 — 

*Krohn & Moss, Amy Myers-Burns, Eric S. Fortas, Amy M. Budow,* for appellant.
*Swift, Currie, McGhee & Hiers, Charles B. Marsh,* for appellee.