A04A2106. KNIGHT v. AMERICAN SUZUKI MOTOR CORPORATION.
(612 SE2d 546)

ADAMS, Judge.

Kevin Knight appeals from the trial court's grant of summary judgment to American Suzuki Motor Corporation, in his action seeking damages for breach of written and implied warranties in connection with his purchase of a new 2001 Suzuki Vitara.

On March 11, 2002, Knight purchased the Vitara from an authorized Suzuki dealer for $16,790.23, excluding finance charges. A few months after taking possession of the Vitara, Knight began to experience problems with it. On July 10, 2002, after driving the vehicle 4,892 miles, Knight brought it into an authorized Suzuki repair facility complaining that the air conditioning unit was making noise. A Suzuki repair technician determined that an exhaust bracket bolt was missing and replaced the bolt. Nevertheless, Knight returned on August 7, less than one month later, reporting that the air conditioning was making whining and rumbling noises, which increased as the vehicle got hotter. The repair technician noted a "rattle" on the work order and determined that he needed to order a part. Knight made an appointment to bring his vehicle back in for the repair and on August 28, the repair technician replaced the exhaust pipe.

Knight averred that he became frustrated because the vehicle was not being permanently repaired and decided to hire an attorney. In a letter dated September 6, 2002, Knight's attorney wrote Suzuki to complain of breach of warranty and to state that Knight was revoking acceptance of what he asserted was a nonconforming vehicle. The next day, however, Knight returned to the repair facility complaining of a grinding, growling noise in the engine upon start-up.

In response, the repair technician confirmed that the output shaft was making a noise, and Suzuki repaired and replaced the vehicle's transfer assembly.

On September 10, 2002, Suzuki received a separate letter from Knight complaining that his air conditioner was still making noise. In response, a sales manager from the Suzuki dealership called Knight and asked him to bring in his automobile. On September 20, the service manager rode in the vehicle to determine the problem firsthand. Afterward, the service technicians replaced the unit's expansion valve, and also evacuated and recharged the system. During this visit to the repair facility, Knight also reported trouble with the brake light on the dashboard, which would illuminate when the vehicle turned a curve or was stopped at a red light, and in response, the technicians refilled the vehicle's brake fluid.

Knight admitted during his deposition that this time Suzuki's repair had corrected the problem with the air conditioner, and he had not heard the rattling noise since that time. He also conceded that the noise never interfered with the cooling capabilities of the air conditioner; rather, his complaint was about the noise it made. Nevertheless, Knight filed this lawsuit on October 24, 2002, asserting that the rattling noise had *not* been corrected.

While the action was pending, Knight reported various problems with the Vitara's windows and clutch. Suzuki repair technicians ordered replacements for Knight's windows in January 2003, and replaced the driver's side window in February after receiving the parts, but did not have time to complete replacement of the passenger-side window during that visit. Although a new passenger-side window unit was available, Knight did not reschedule an appointment to complete that repair until after his deposition in July 2003 because he said he had not had time. In fact, Knight did not return the automobile for this repair until September 20, 2003, and the window was repaired on October 4. During these later visits, he also reported problems with the clutch. Knight averred in his affidavit that the service technician indicated during one of the visits that he had adjusted the clutch, but no clutch repairs are reflected on the work orders.

The trial court granted Suzuki's motion for summary judgment as to Knight's claims for breach of express warranty, breach of implied warranty of merchantability and breach of warranty under the Magnuson-Moss Warranty Act. The court also found that even assuming that Knight had successfully revoked his acceptance of the Vitara, he had, in effect, reaccepted the vehicle by seeking repairs under the terms of the written warranty. Thus, the trial court denied Knight's claim to

recover the purchase price of the vehicle.[1]

This Court reviews the trial court's grant of summary judgment de novo, construing the evidence in a light most favorable to Knight. *Latson v. Boaz*, 278 Ga. 113 (598 SE2d 485) (2004). And in order to prevail at summary judgment, Suzuki was required to show that no genuine issue of material fact exists and that the undisputed evidence, when viewed in that light, warranted judgment in the corporation's favor as a matter of law. Because Suzuki would not bear the burden of proof at trial, it was only required to demonstrate an absence of evidence to support an essential element of Knight's case in order to prevail. Id.

1. Knight asserts that the trial court erred in granting the motion for summary judgment as to his claim for breach of express warranty.[2] The trial court found that no jury issue remained on Knight's claim that Suzuki breached its written limited warranty because the evidence showed that Suzuki had addressed all of Knight's concerns when he brought his car in for servicing and that the repairs had been made. The trial court noted, in particular, that the problems with the air conditioner had been resolved before Knight even filed his complaint. But Knight contends that a jury issue exists as to whether the repairs were done in a reasonable time or in a reasonable number of repair attempts. He asserts that he was required to take his car in for repairs on nine occasions to address a myriad of problems, and that the jury should decide whether this constituted a breach.

Knight filed his claim for breach of the limited warranty under the Magnuson-Moss Warranty Act and state law. "The Magnuson-Moss Warranty Act creates no claims except for attorney fees and relies upon state law to create and define implied warranties, breach, and some kinds of damages. . . ." (Citations omitted.) *McDonald v. Mazda Motors of America*, 269 Ga. App. 62, 64 (603 SE2d 456) (2004) (physical precedent only). Therefore, the warranty law of Georgia applies, "except where the Magnuson-Moss Warranty Act requires a different result." Id.

Georgia law imposes two conditions before a breach of a written warranty can exist: (1) notice of the defect and (2) a reasonable

---

[1] Because Knight does not assert any argument on appeal with regard to the trial court's ruling on his claim for damages under the Magnuson-Moss Warranty Act or on his claim of revocation of acceptance, we do not address those issues.

[2] The limited warranty in this case provides in pertinent part:

SUZUKI provides this warranty for new 2001 vehicles. This warranty covers all parts of the vehicle as supplied by SUZUKI. Needed repairs to correct defects in material or workmanship during the manufacture of the vehicle will be made at no charge for parts and labor. Any needed parts replacement will be made using new or remanufactured SUZUKI parts.

opportunity to repair the defect. *McDonald v. Mazda Motors*, 269 Ga. App. at 65 (1) (a), citing OCGA §§ 11-2-508; 11-2-605; 11-2-607 (3) (a). See also *DeLoach v. Gen. Motors*, 187 Ga. App. 159 (369 SE2d 484) (1988). Accordingly, a warranty is not breached simply because a vehicle is found "on delivery or at some time thereafter within the warranty period to have a defective part or [an] operational deficiency." (Citation and footnote omitted.) *Olson v. Ford Motor Co.*, 258 Ga. App. 848, 851 (2) (575 SE2d 743) (2002). "Assuming the purchaser has maintained his vehicle in the manner specified, it is the *refusal to remedy* within a reasonable time, or a *lack of success* in the attempts to remedy [that] would constitute a breach of warranty." (Citation and footnote omitted; emphasis in original.) Id. And where the buyer makes the vehicle available for repair under the warranty, "refusal to repair, unsuccessful repair, or repeated failures of the repair constitute a breach of the express warranty." (Citations omitted.) *McDonald v. Mazda Motors*, 269 Ga. App. at 66 (1) (a). See also *Simpson v. Hyundai Motor America*, 269 Ga. App. 199, 203 (1) (a) (603 SE2d 723) (2004). Moreover, unless the repairs are accomplished within a reasonable amount of time, the warrantor may be deemed to be in breach of the warranty. *Stephens v. Crittenden Tractor Co.*, 187 Ga. App. 545, 547 (1) (a) (370 SE2d 757) (1988); *Ford Motor Co. v. Gunn*, 123 Ga. App. 550, 551 (1) (181 SE2d 694) (1971).

There is no evidence that Suzuki refused to make repairs, and we agree with the trial court that Knight presented no evidence to raise an issue as to whether the repairs were unsuccessful. He admitted in his deposition that he had no further problems with the air conditioning unit after September 2002. And although at the time of Knight's deposition he was still having problems with the windows, he admitted that he had been too busy to take the car in for further repair. His later affidavit reflects that, after delaying seven months after the part for the passenger window became available, he returned the vehicle for additional repairs on the windows. He presented no evidence or testimony to indicate that these repairs were unsuccessful. At the time Knight sought repair of the windows, he also reported problems with the clutch. While the evidence is in conflict as to what repairs, if any, were performed on the clutch, Knight has failed to present evidence showing that the problem persisted after these visits. The last repair order on this issue simply indicates that the problem with the clutch could not be replicated by the service technician. See *Simpson v. Hyundai Motor America*, 269 Ga. App. at 204 (1) (a) (summary judgment affirmed where plaintiffs failed to come up with any evidence of defects or refusal to repair or lack of success in repairing, except their own opinions that the cars were defective).

Thus, Suzuki's breach of its warranty occurred, if at all, in the failure to complete the repairs in a reasonable time. See *Hightower v. Gen. Motors Corp.*, 175 Ga. App. 112, 114 (2) (332 SE2d 336) (1985), overruled on other grounds, *Pender v. Witcher*, 196 Ga. App. 856, 857 (397 SE2d 193) (1990). Knight contends that the requirement that the repairs be made in a reasonable time arises under both state law and the Magnuson-Moss Warranty Act. See 15 USC § 2304 (a) (1). He asserts that under the Act, a warrantor is allowed only a "reasonable number of attempts" to fix a defective or malfunctioning product, 15 USC § 2304 (a) (4). Knight argues that a jury question exists on this issue because Suzuki had a total of nine attempts to repair his Vitara.

In making this argument, he relies upon an unpublished decision of the United States District Court for the Northern District of Illinois, which after reviewing the legislative history of 15 USC § 2304, held that when analyzing this issue, courts should consider the number of attempts required to fix the vehicle as a whole, as opposed to the number of attempts required to fix each defect as it arose. *Soldinger Assoc. v. Aston Martin Lagonda of North America*, 1999 U. S. Dist. LEXIS 14765 at *11 (N.D. Ill. 1999).

But the *Soldinger* analysis has no application here. The Magnuson-Moss Warranty Act requires that a warrantor specify whether a written warranty is a full or limited warranty, 15 USC § 2303 (a), and Suzuki's warranty clearly states that it is a "New Vehicle Limited Warranty." And "[o]nly full warranties are required to meet the minimum standards set forth in 15 USC § 2304. Therefore, because the law relating to limited warranties is not expressly modified, limited warranties, such as [Suzuki's], are not governed by Magnuson-Moss but by the Uniform Commercial Code." (Citations omitted.) *Bailey v. Monaco Coach Corp.*, 350 FSupp.2d 1036, 1042 (III) (A) (N.D. Ga. 2004). See also *Gilbert v. Monaco Coach Corp.*, 352 FSupp.2d 1323, 1330 (N.D. Ga. 2004); *Razor v. Hyundai Motor America*, 349 Ill. App.3d 651, 661 (813 NE2d 247) (2004); 15 USC § 2303 (a) (2).[3] Accordingly, the Magnuson-Moss Warranty Act has no application to the issue of the reasonableness of Suzuki's repairs in this case. Instead, Georgia law determines whether an issue of fact exists regarding Knight's claim of breach.

And we find that the trial court could appropriately consider the time involved in making the repair of each defect as it arose in order to analyze the issue of reasonableness. Under Georgia law, a customer must establish that he notified the warrantor of the defect as

---

[3] That provision provides that "[i]f the written warranty does not meet the Federal minimum standards for warranty set forth in section [2304 of this title], then it shall be conspicuously designated a 'limited warranty.'" 15 USC § 2303 (a) (2).

a condition to proving breach of warranty, and the warrantor has a reasonable time in which to repair the defect. *McDonald v. Mazda Motors*, 269 Ga. App. at 65 (1) (a); *Stephens v. Crittenden Tractor Co.*, 187 Ga. App. at 547 (1) (a). The time for making repairs, therefore, necessarily runs from the date that the warrantor receives notice of each defect.

We agree with the trial court that the evidence fails to present a question for the jury on this issue. Suzuki addressed each defect as it arose, and most repairs were effected in a matter of days. Certainly, it never required more than two to three visits to complete the repairs.[4] The only extended delay in repairs was the result of Knight's own decision to postpone bringing the vehicle into the repair facility. Under these circumstances, we find no error in the trial court's grant of summary judgment on Knight's claim of breach of the express warranty.

> This Court disagrees with [Knight] that the question of whether repairs were made within a reasonable time always requires a jury determination. Though genuine issues of fact with regard to this question can and do exist, in such a case as this, no reasonable jury could find that [Suzuki] required an unreasonable amount of time to complete the repairs on any of the defects. A court may grant summary judgment when it concludes that no reasonable jury may infer from the assumed facts . . . the conclusion upon which the non-movant's claim rests.

(Citation and punctuation omitted.) *Hines v. Mercedes-Benz USA*, 358 FSupp.2d 1222, 1232 (III) (A) (1) (N.D. Ga. 2005). See also *Bailey v. Monaco Coach Corp.*, 350 FSupp.2d at 1047 (construing similar provisions of Florida law). Compare *McDonald v. Mazda Motors*, 269 Ga. App. at 67 (1) (a) (jury question presented where it took 17 months to repair defects evidenced by persistent rattle and engine running rough); *Hightower v. Gen. Motors Corp.*, 175 Ga. App. at 114 (2) (jury issue presented where it took 115 days to complete repairs after the rear axle became dislodged and pierced car's rear compartment).

2. Knight also contends that the trial court erred in granting summary judgment on his claim of breach of an implied warranty of merchantability. The trial court found that Knight had failed to

---

[4] Even the *Soldinger* case, upon which Knight relies, acknowledged that if only two or three attempts were required to make repairs the court might be able to conclude as a matter of law that the number of attempts was reasonable. *Soldinger v. Aston Martin Lagonda*, 1999 U. S. Dist. LEXIS at *16.

present evidence that the vehicle was not merchantable when he bought it. The court noted that Knight testified that he could drive the vehicle and it did not stop or stall, and thus concluded that any defects for which he sought repair did not affect the merchantability of the vehicle. And the court noted that the affidavit of Mike Wardingly, Knight's expert, only provided the conclusory legal opinion, without evidentiary support, that the vehicle was "un-merchantable" due to the problems it experienced. Knight argues, however, that this ruling deprived him of due process of law because the trial court granted summary judgment on an issue that Suzuki did not raise in its motion for summary judgment.

"A product is defective and breaches the implied warranty of merchantability when it is not 'fit for the ordinary purposes for which such goods are used'; such purpose is determined by the manufacturer and not the user. OCGA § 11-2-314; [cits.]" *McDonald v. Mazda Motors*, 269 Ga. App. at 68 (2) (b). See also *Battersby v. Boyer*, 241 Ga. App. 115, 116 (1) (526 SE2d 159) (1999); *Freeman v. Hubco Leasing*, 253 Ga. 698, 703 (2) (324 SE2d 462) (1985). In addition, as a separate element, a claim of breach of implied warranty requires proof that the goods are defective at the time they were sold. *McDonald v. Mazda Motors*, 269 Ga. App. at 68 (2) (b); *Dildine v. Town & Country Truck Sales*, 259 Ga. App. 732, 734 (1) (577 SE2d 882) (2003).

To succeed on its motion, Suzuki was required to show the absence of evidence as to at least one element of the breach of implied warranty claim. The corporation chose to focus on the timing element,[5] arguing that Knight failed to present evidence that the Vitara was defective at the time he purchased it. In response, Knight filed Wardingly's affidavit in which the expert opined that the Vitara was defective and unmerchantable at the time of the sale. He based this opinion on the fact that Knight experienced problems with the Vitara's air conditioning, engine and windows "so early in the vehicle's life," noting particularly that one of the repairs involved installing an exhaust bracket bolt that was missing from the vehicle. At the summary judgment hearing, however, Suzuki presented argument on the element of merchantability. The trial court granted summary judgment on this ground, finding that the evidence did not show, and Wardingly's affidavit did not establish, that the Vitara was unmerchantable under Georgia law.

---

[5] Although Suzuki argues that it did not have the opportunity to argue the issue of merchantability until after the Wardingly affidavit was filed, this argument is disingenuous. Wardingly's affidavit did not alter the evidence on this issue as he did not address it except in conclusory fashion. Thus, Suzuki could have addressed this issue in its motion, had it chosen to do so.

But Knight was not required to brief the issue of merchantability in response to Suzuki's motion, or to present evidence in support of that element, until Suzuki had pierced the allegations of his complaint on that issue. "Nothing in [the applicable law] places a burden on a plaintiff to respond to issues which are not raised in the motion for summary judgment or to present its entire case on all allegations in the complaint — even on issues not raised in the defendant's motion." *Hodge v. SADA Enterprises*, 217 Ga. App. 688, 690 (1) (458 SE2d 876) (1995). And while a trial court may grant summary judgment sua sponte, "a trial court's authority to do so is not unlimited":

> The grant of summary judgment must be proper in all other respects. This means that in addition to ensuring the record supports such a judgment, the trial court must ensure that the party against whom summary judgment is rendered is given full and fair notice and opportunity to respond prior to entry of summary judgment.

(Citations and punctuation omitted.) Id.

Here, the trial court erred in granting summary judgment on a ground not raised in Suzuki's motion without giving Knight proper notice that this issue would be considered. And although Knight arguably had some opportunity at the hearing to address this issue, without prior notice, he had no opportunity to present written argument or to proffer his expert's testimony on the issue. We note that the trial court based its ruling, in part, upon deficiencies in his expert's affidavit on this ground. Accordingly, we reverse the grant of summary judgment on the breach of implied warranty claim. See *Coweta County v. Simmons*, 269 Ga. 694 (507 SE2d 440) (1998); *Hodge v. SADA Enterprises*, 217 Ga. App. at 690 (1). In so holding, however, we expressly do not address the issue of whether the evidence was sufficient to raise a jury question on the issue of merchantability.

*Judgment affirmed in part and reversed in part. Ruffin, C. J., and Bernes, J., concur.*

DECIDED MARCH 21, 2005.

*Krohn & Moss, Adam Krohn, Amy M. Budow, Eric S. Fortas*, for appellant.

*McGuire Woods, Jefferson M. Allen*, for appellee.