### 68875. GENERAL MOTORS CORPORATION v. GREEN.
(325 SE2d 794)

CARLEY, Judge.

Appellee-plaintiff purchased a 1981 Cadillac Eldorado, a vehicle which is manufactured by appellant-defendant. At the time of the sale, appellee was provided a written document denominated as appellant's "NEW CAR WARRANTY." Appellee subsequently discovered that his automobile had problems of a non-mechanical nature which arose from its having been damaged and purportedly repaired during the manufacturing process. He instituted the instant action against appellant, alleging a count for breach of warranty and a count for fraud. The sole basis for appellee's allegations was the warranty and representation that the vehicle he had purchased was a "new" car. The case was submitted to a jury. A verdict was returned for appellee as to both counts and he was awarded actual and punitive damages and attorney fees. Appellant motion for judgment n.o.v. or new trial was denied. It appeals.

1. Appellee relies upon the holding in *Horne v. Claude Ray Ford Sales*, 162 Ga. App. 329 (1) (290 SE2d 497) (1982): "It may be considered an intrinsic quality of a car sold as new that it has been neither damaged nor used to any significant extent. [Cits.]" Since in the instant case there was evidence "not only that the car had been damaged but also that it had been partially repaired" (*Horne v. Claude Ray Ford Sales*, supra at 329), appellee contends that the case was properly submitted "to the jury on the theory of breach of express warranty." *Horne v. Claude Ray Ford Sales*, supra at 330 (4).

"Express warranties by the seller are created as follows: (a) Any

affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise. (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." OCGA § 11-2-313 (1) (a) and (b). We have examined the record in *Horne* in order to gain a clearer understanding of the express "new" car warranty which was the basis for the holding in that case. We have found that there is a significant difference between the express warranty in *Horne* and that in issue in the instant case. The express warranty in *Horne* consisted only of the bare description of the vehicle as a "new" automobile. Unlike the warranty in *Horne*, the "NEW CAR WARRANTY" in the instant case contains the following additional language: "Defects or damage to sheet metal, paint, trim or other appearance items may occur at the factory during assembly . . . . Normally, any factory defect or damage is detected and corrected at the factory during the inspection process. In addition, Cadillac dealers are obligated to inspect each car before delivery. They repair any uncorrected factory defects or damage . . . which they detect before the car is delivered to you. Sheet metal, paint or appearance defects still present at the time the car is delivered to you are covered by the warranty . . . ." Obviously, this additional language must be taken into account when considering the overall scope and effect of appellant's "NEW CAR WARRANTY." All parts of a warranty must be construed together and reconciled if possible. *McDew v. Hollingsworth*, 19 Ga. App. 166 (91 SE 246) (1916).

Under its express and unambiguous terms, appellant's "NEW CAR WARRANTY" describes its "new" vehicle as a product that might nonetheless contain factory-damage to some of its parts, which damage may or may not have been repaired at the time of sale. The absence of any damage whatsoever may be deemed to be an "intrinsic quality" of a car which is otherwise sold under the mere general descriptive rubric that it is a "new" product. However, the more expansive language of appellant's express warranty is clearly an attempt to limit the automatic attribution of that quality to its "new" vehicles, insofar as it expressly recognizes the possibility that certain parts of its product may have been factory-damaged and that, as the consequence, its final product might contain factory-repairs.

"Words . . . relevant to the creation of an express warranty and words . . . tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other . . . ." OCGA § 11-2-316 (1). The instant case involves the issue of limitation of an express "new" car warranty, not the negation of any warranty by disclaimer. There is nothing unreasonable or inconsistent in an affirma-

tion, promise or description by a manufacturer that its vehicle is "new" and its recognition that, even so, the vehicle might contain factory-damage and/or factory-repairs. Employing the general distinction that is drawn between "new" and "used" automobiles, an automobile may be the manufacturer's "new" vehicle in the generally recognized sense of never having been "used to any significant extent." *Horne v. Claude Ray Ford Sales*, supra at 329. Thus, as the end result of a manufacturing process, a final product offered for initial sale may still be the manufacturer's "new" product even though certain of its constituent parts may have been damaged and attempts at repairs made during that process. Compare *Century Dodge v. Mobley*, 155 Ga. App. 712 (272 SE2d 502) (1980) (where the automobile had been involved in an accident, it was held unreasonable to allow car *dealership's* express "new" car warranty to be totally *negated* by *disclaimer* in same sales contract). There appears to be no reason in law or logic to require that the manufacturer's description of its final product as "new" must necessarily include the affirmation, as a matter of law and without the possibility of express limitation to the contrary, that parts of its finished product were not damaged and no attempts at repairs were made in the manufacturing process. Compare *Century Dodge v. Mobley*, supra. Accordingly, even assuming that *Horne* would require a different result in the case of a bare warranty that an automobile is "new," we hold that the express and unambiguous language of appellant's "NEW CAR WARRANTY" constitutes a reasonable and noncontradictory limitation on the automatic attribution to appellant's "new" cars of the "intrinsic quality" of a totally damage-free and repair-free condition.

All of appellee's evidence that the automobile he purchased was not "new" related to the existence of certain non-mechanical problems with the automobile which arose because it had been damaged during the manufacturing process and then either poorly repaired or, in some instances, not repaired at all. It appears that in each instance the asserted damage was to a portion or element of the automobile, the possibility of factory-damage to which or defect in was acknowledged by the express terms of appellant's written warranty. As such, those uncorrected factory defects and damage, including defective factory-repairs to the damaged parts, would be covered by the terms of appellant's express repair warranty in that regard, but their existence would not demonstrate a breach of appellant's warranty that the car was a "new" vehicle. " 'While a breach of warranty generally occurs upon delivery of the goods regardless of the time of discovery of the breach . . . where there is an agreement to repair or replace, the warranty is not breached until there is a refusal or failure to repair. "[I]t is the *refusal to remedy* within a reasonable time, or a *lack of success* in the attempts to remedy which would constitute a breach

of warranty." [Cits.]' [Cit.]" (Emphasis in original.) *Patron Aviation v. Teledyne Indus.*, 154 Ga. App. 13, 16 (267 SE2d 274) (1980). In the instant case, appellee made no attempts to invoke the provisions of this portion of the warranty. In fact, he refused all offers to make repairs to the automobile at no cost to him. Instead, appellee has consistently contended that the automobile is not "new" simply because it contains factory-damage and needs repairs. Under the terms of appellant's warranty, appellee's "all or nothing" election must fail. The trial court erred in failing to grant appellant's motion for judgment n.o.v. as to the breach of warranty count.

2. For similar reasons, the trial court erred in failing to grant appellant's motion for judgment n.o.v. as to the fraud count. " 'Fraud may be consummated by signs or tricks, acts or silence, concealment when there is a duty to disclose, or by any other unfair way used to cheat another. [Cits.]' [Cit.]" *Ga. Farm Bureau Mut. Ins. Co. v. First Fed. Savings & Loan*, 152 Ga. App. 16, 20 (262 SE2d 147) (1979). The possible existence of factory-damage and factory-repairs was expressly disclosed, not concealed, in the sales agreement signed by appellee, and the evidence demonstrates no actionable false misrepresentation by appellee that the automobile was "new." See generally *Jackson v. Smith*, 94 Ga. App. 697 (96 SE2d 193) (1956); *Pa. Life Ins. Co. v. Hall*, 147 Ga. App. 882 (250 SE2d 573) (1978). Compare *Horne v. Claude Ray Ford Sales*, supra.

3. The remaining enumerations relate to issues raised by the special grounds of appellant's motion for new trial. It appears that at least one, if not more, of those enumerations has merit. However, since the judgment is being reversed on the general grounds for the reasons discussed in Divisions 1 and 2 of this opinion, we need not address these remaining enumerations, meritorious or otherwise.

*Judgment reversed. Birdsong, P. J., and Beasley, J., concur.*

DECIDED DECEMBER 3, 1984 —
REHEARING DENIED DECEMBER 20, 1984 —

*Byron Attridge, Nolan C. Leake, R. Marcus Lodge*, for appellant. *Carol D. Sweet, Robert W. Beynart*, for appellee.