A94A1859. RIVERS v. BMW OF NORTH AMERICA, INC. et al.
(449 SE2d 337)

McMURRAY, Judge.

Pennelope Rivers (plaintiff) brought this tort action against defendants BMW of North America, Inc. ("BMW-NA"), Charles Evans BMW, Inc. ("Charles Evans"), and others, alleging intentional fraud and deceit, reckless misrepresentation, and suppression of material facts,[1] for selling her a new car which had been damaged by acid rain and repainted. Specifically, the complaint alleged that in "February 1990, Plaintiff purchased a 1990 BMW 535i automobile . . . from the Defendant Charles Evans BMW, Inc. . . . [which vehicle was] distributed by the Defendant BMW of North America, Inc.[; that at] all times prior to the sale of the vehicle to the Plaintiff, the Defendants represented that the vehicle was a brand new vehicle . . . [but that such] . . . representations by the Defendants were false and the Defendants knew them to be false at the time of their making." Alternatively, defendants made false statements "without knowledge of the true facts . . . [and] recklessly without regard to ascertaining the truth or falsity of those representations."[2] Defendants "failed to disclose the fact that this vehicle had been damaged [in transit by acid rain] and repainted prior to selling it to [her]." As a result of defendants' failure to disclose this material fact, plaintiff "financed the purchase price of approximately $30,000. . . ." She claimed as damages the "[d]iminution in value of the car," as well as punitive damages, attorney fees, and the costs of litigation. In their respective answers, de-

---

[1] A fourth count alleging a violation of the Georgia Fair Business Practices Act, OCGA § 10-1-390 et seq. was dismissed as time-barred.

[2] The parties agree that the duty to disclose known repairs established at OCGA § 40-1-5 is not applicable to this sale.

fendants admitted only that BMW-NA distributed the vehicle plaintiff purchased from Charles Evans and denied all other allegations. After discovery, defendants jointly moved for summary judgment "on all remaining counts of Plaintiff's complaint[, . . . contending that they were] entitled to judgment as a matter of law both by the merger clause and by the transit and/or storage damage disclosure contained in the Buyer's Order and Bill of Sale."

In support of their motion, defendants relied on the following undisputed facts: when the car plaintiff purchased as "new" arrived in the United States its exterior paint and finish had been marred "by exposure to environmental conditions during transit and/or storage[; that, at the direction of BMW-NA,] the affected surfaces were refinished according to factory specifications by BMW trained technicians, using BMW approved and installed equipment [at the BMW-NA Vehicle Preparation Center in Brunswick, Georgia, before shipment to a dealership; and that plaintiff] did not ask anyone at Charles Evans whether any repairs were performed on the Automobile, despite the fact that the possibility of transit and/or storage damage was expressly disclosed in the Buyer's Order." Defendants argued that plaintiff had affirmed the contract after knowledge of the alleged fraud by failing to rescind the contract. Plaintiff responded, urging that factual issues existed "as to whether the disclaimer and the buyer's order negates Defendants' affirmations that the car was new, whether the Plaintiff failed to exercise due diligence as a matter of law and whether the Plaintiff adopted the disclaimer."

The trial court granted defendants' motion for summary judgment, concluding that plaintiff had failed to dispute the factual assertions of the defendants and that due to the disclosure of the possibility of transit damage contained in the Buyer's sales order "no misrepresentation occurred as a matter of law." The trial court further concluded that plaintiff "failed to exercise due diligence in ascertaining the alleged falsity . . ." of the description of the car. This appeal followed. *Held*:

1. In related enumerations, plaintiff contends the trial court erred in "ruling as a matter of law that [her claims] are barred . . . [and that she] failed to exercise due diligence."

Traditionally, where a buyer is induced to enter into a contract for the sale of goods by the fraud of the seller, upon discovery of the fraud he has an election of remedies. See *Bill Spreen Toyota v. Jenquin*, 163 Ga. App. 855, 856 (1) (294 SE2d 533). "One of such remedies is to rescind the contract, and another is to affirm the contract and sue for damages for the fraud. [Cits.]" *Tuttle v. Stovall*, 134 Ga. 325, 326 (1), 328 (67 SE 806). The General Assembly did not intend "to erase the tort remedy for fraud and deceit with the adoption of the Uniform Commercial Code in Georgia." *City Dodge v. Gardner*,

232 Ga. 766, 769 (208 SE2d 794). Generally, such "tort cases canno[t] be determined by the provisions of the contract sought to be re[-] scinded but must be determined as a question of fact by the jury. It i[s] inconsistent to apply a disclaimer provision of a contract in a tor[t] action brought to determine whether the entire contract is invalid be[-] cause of alleged prior fraud which induced the execution of the con[-] tract. If the contract is invalid because of the antecedent fraud, the[n] the disclaimer provision therein is ineffectual since, in legal contem[-] plation, there is no contract between the parties." *City Dodge v* *Gardner*, 232 Ga. 766, 770, supra.

In the case sub judice, BMW-NA and Charles Evans each relie[d] on the following language contained in the sales agreement signed b[y] plaintiff to show that no misrepresentation was made at all becaus[e] no material fact was concealed: "5. Purchaser acknowledges that ther[e] may have been certain transit and or storage damage to the vehicl[e] sold by the Seller herein [defendant Charles Evans] and Purchase[r] hereby releases the Seller for any and all claims arising out of suc[h] transit damage and or storage damage. Exceptions are noted on fron[t] of order under SPECIAL NOTICE." Applying *Gen. Motors Corp. v* *Green*, 173 Ga. App. 188, 191 (2) (325 SE2d 794) by analogy, the tria[l] court concluded that no fraudulent misrepresentation occurred be[-] cause the possibility of transit-related damage was expressly dis[-] closed. In *Green*, "the *manufacturer*-defendant's 'new' car warrant[y] specifically *disclosed* the possible existence of *factory* damage an[d] *factory* repairs." (Emphasis in original.) *Macon Chrysler-Plymouth v* *Sentell*, 179 Ga. App. 754 (1), 755 (347 SE2d 639). That is, in *Green* the defendant manufacturer was providing a new car warranty bu[t] limiting the definition of "new" so that a breach of warranty woul[d] not arise out of the bare circumstance that a manufacturing flaw ha[d] been noticed and corrected before the vehicle entered the stream o[f] commerce. In *Green*, "uncorrected factory defects and damage, in[-] cluding defective factory-repairs to the damaged parts, would be cov[-] ered by the terms of [the manufacturer's] express repair war[-] ranty. . . ." 173 Ga. App. 188 (1), 190, supra.

In the case sub judice, however, neither the defendant dealershi[p] Charles Evans nor the defendant distributor BMW-NA sought to dis[-] close the fact that BMW-NA had actually repaired transit damag[e] while at the same time extending a warranty which covered negli[-] gence in those repairs. Instead, this sales agreement sought to dis[-] claim all warranties, express or implied, employing in bold text th[e] language "SOLD AS IS." Nevertheless, defendants submit as conclu[-] sive proof that no material fact was concealed the circumstance tha[t] this sales agreement mentions on the reverse side in the least conspic[-] uous print employed the bare possibility that transit or storage dam[-] age might have been sustained. However, unlike the provision in *Ge[n.]*

*Motors Corp. v. Green*, 173 Ga. App. 188 (1), supra, this clause does not warrant that if there had been such damage it would have been repaired by authorized entities according to factory standards. This disclaimer does not mention the distinct possibility of damage from acid rain fallout or "exposure to environmental conditions," although there is evidence of record that such damage was foreseen. According to a 1986 Service Information Bulletin: "Paint spotting as a result of [acid rain] fallout is not related to a defect in paint materials or workmanship. For this reason, claims arising from this condition are not considered to be warranty-related." As the only warranty extended in the case sub judice is the express warranty created by the description of the car as "new" versus "demo" or "used," the case of *Gen. Motors Corp. v. Green*, 173 Ga. App. 188, 191 (2), supra, is distinguishable in material respects. That case does not demand a finding that plaintiff in this case has no actionable claim of fraud for the misrepresentation of her car as "new" when in fact it had undergone repairs to correct acid rain damage to the factory finish. Whether the disclaimer relied on here is sufficient to excite the attention of a buyer of ordinary prudence "must be determined as a question of fact by the jury." *City Dodge v. Gardner*, 232 Ga. 766, 770, supra. See also OCGA § 23-1-17; *Dollar v. Dollar*, 214 Ga. 499 (105 SE2d 736). The trial court erred in concluding that the disclaimer in this sales contract was sufficient disclosure of the acid rain damage actually sustained and actually repaired, as a matter of law.

2. The trial court further erred in concluding that the evidence showing plaintiff was aware of a problem with the paint job shortly after she accepted the vehicle demonstrated as a matter of law that she failed to exercise due diligence on her own behalf. There is evidence of record (from a similar case against BMW-NA in Alabama) where plaintiff testified that when she took the car back to Charles Evans, "[t]hey told me that the car had not been repainted."

"It may be considered an intrinsic quality of a car sold as new that it has been neither damaged nor used to any significant extent. Accord, *Rustin Oldsmobile v. Kendricks*, 123 Ga. App. 679 (2) (182 SE2d 178) (1971); *Gem City Motors v. Minton*, 109 Ga. App. 842 (137 SE2d 522) (1964)." *Horne v. Claude Ray Ford Sales*, 162 Ga. App. 329 (1) (290 SE2d 497). See also *Macon Chrysler-Plymouth v. Sentell*, 179 Ga. App. 754 (1), 755, supra. Compare *Henderson v. Martin Burks Chevrolet*, 183 Ga. App. 868, 869 (1) (360 SE2d 430). In the whole court case of *Bill Spreen Toyota v. Jenquin*, 163 Ga. App. 855, 861 (5), supra, this court approved the following jury instruction as a correct statement of the law: " 'Concealment of material facts may amount to fraud when direct inquiry is made, and the truth evaded, or where the concealment is of intrinsic qualities of the article which the other party by the exercise of ordinary prudence and

caution could not discover.' " With regard to the falsity of a representation of an intrinsic quality of a motor vehicle, it was also held that to be actionable, "the misrepresentations must be made with the intention of deceiving another, and the defendant at the time must either know they were false *or what the law regards as the equivalent of knowledge. McLendon v. Galloway*, 216 Ga. 261 (2) (116 SE2d 208) (1960). What one may not do is to turn his head away and blind himself to the truth or falsity of a condition which he recklessly represents to his own advantage. Such refusal to know, like admitted knowledge, involves actual, moral guilt. [Cits.]" (Emphasis in original.) *Bill Spreen Toyota v. Jenquin*, 163 Ga. App. 855, 858 (3), supra.

In the case sub judice, we are shown no evidence of record that BMW-NA took any steps to alert the dealership that acid rain repairs had actually been performed. Nor is there evidence of any procedure whereby the dealership inquired whether foreseeable transit damage had actually been sustained. "The acid rain damage to the original finish had been painted over. [If done properly, the repair would have been undetectable to the untrained eye.] . . . It cannot be said that due diligence in buying an automobile would require a prospective purchaser to make such an inspection as possibly would have disclosed this latent damage. [Cit.] This would seem to be especially true where, as here, the purchaser does inquire about the [subsequently observed flaws] in the automobile's finish and is told that [her car had not been repainted]." *Macon Chrysler-Plymouth v. Sentell*, 179 Ga. App. 754 (1), 755, supra. In the case sub judice, there is "ample evidence to raise a jury question as to whether the defendant [distributor, BMW-NA wilfully concealed what it] knew, or [whether the dealership, Charles Evans,] recklessly failed to ascertain the truth or falsity, of the representation it made as to the [intrinsic quality] of the merchandise sold." *Bill Spreen Toyota v. Jenquin*, 163 Ga. App. 855, 858 (3), 860, supra.

3. In order to prevail on summary judgment, the defendant-movant is required to pierce the allegations of the complaint or otherwise show the absence of a triable issue as to an essential element of the nonmovant's case and must further establish as a matter of law that the plaintiff could not recover under any theory fairly drawn from the pleadings and the evidence. See *Thompson v. Huckabee Auto Co.*, 190 Ga. App. 540, 541 (1) (379 SE2d 411); *Lau's Corp. v. Haskins*, 261 Ga. 491, 495 (4) (405 SE2d 474). " 'A suit for damages by the defrauded party for the fraud committed is not a suit for the violation of the contract, but is one for a tort and involves affirmance of the contract, and he may keep the fruits of the contract and maintain an action for the damages suffered by reason of the fraud.' " *Gen. City Motors v. Minton*, 109 Ga. App. 842, 845 (1c), 846, supra. Compare *Crews v. Cisco Bros. Ford-Mercury*, 201 Ga. App. 589 (1), 590

591 (411 SE2d 518). "Although there is included on the retail sales contract a paragraph which specifically disclaims any express or implied warranties by the seller [Charles Evans], [plaintiff is entitled to rely] on OCGA § 11-2-313 [(1)] (b). It provides that an express warranty is created by the seller upon '(a)ny description of the goods which is made part of the basis of the bargain. . . .' The warranty is that 'the goods shall conform to the description.' [In the case sub judice, Charles Evans'] retail sales contract described the car as 'new.' The specific disclaimer [of express or implied warranties] will not negate that affirmative statement. *Century Dodge v. Mobley*, 155 Ga. App. 712, 713 (2) (272 SE2d 502) (1980)." *Thompson v. Huckabee Auto Co.*, 190 Ga. App. 540, 541 (1), 542, supra. The "SOLD AS IS" language also is ineffective to negate the express warranty that the car is "new." See *City Dodge v. Gardner*, 232 Ga. 766, 767, supra. "Accordingly, the case [against the defendant seller, Charles Evans, should] also have gone to the jury on the theory of breach of express warranty." *Horne v. Claude Ray Ford Sales*, 162 Ga. App. 329, 330 (4), supra.

*Judgment reversed. Pope, C. J., and Smith, J., concur.*

DECIDED OCTOBER 6, 1994 —
RECONSIDERATION DENIED OCTOBER 19, 1994 — 

*Bird, Ballard & Still, William Q. Bird,* for appellant.
*Powell, Goldstein, Frazer & Murphy, E. A. Simpson, Jr., Linda G. Birchall, Christopher P. Galanek,* for appellees.