**Betty FEDRICK, Plaintiff,**

v.

**MERCEDES–BENZ USA, LLC, Defendant.**

**No. 1:03–cv–3787–WSD.**

United States District Court, N.D. Georgia, Atlanta Division.

March 28, 2005.

Eric Scott Fortas, Krohn & Moss, Atlanta, GA, for Plaintiff.

Jonathan R. Friedman, McKenna, Long & Aldridge, LLP, Atlanta, GA, for Defendant.

## *ORDER*

DUFFEY, District Judge.

This matter is before the Court on Defendant Mercedes–Benz USA, LLC's ("MBUSA") Motion for Summary Judgment [16], MBUSA's Motion to Strike Portions of Plaintiff Betty Fedrick's ("Plain-

tiff") Affidavit [25], Plaintiff's Motion for Leave to File a Surreply in Opposition to MBUSA's Motion for Summary Judgment [28], MBUSA's Motion to Exclude the Expert Witness Testimony of John Taylor [31], Plaintiff's Motion for Leave to File a Surreply in Opposition to MBUSA's Motion to Strike [35], Plaintiff's Motion for Leave to File Additional Evidence of Damages [41], and Plaintiff's Motion for Disclosure of Danny Candler [42].

## I. BACKGROUND

### A. Factual Background

On January 6, 2003, Plaintiff purchased a 2003 Mercedes–Benz E320W (the "car") from Mercedes–Benz of South Atlanta (the "Dealership"). (Def.'s Statement of Material Facts ("DSMF") [16] ¶ 1.) The car was sold subject to a limited warranty. (DSMF ¶ 2.) The warranty provided MBUSA would make "any repairs or replacements necessary, to correct defects in material or workmanship arising during the warranty period." [1] (Mot. for Summ. J., Ex. E at 13.)

Plaintiff alleges the car suffered from three mechanical problems after she purchased it: (1) a problem with the air conditioner; (2) an unspecified electrical problem; and (3) an intermittent problem with the radio.[2] (DSMF ¶ 3.) Plaintiff testified she no longer experiences any problem with the car's air conditioner and her submission indicates this problem was repaired on the first visit in which she brought the problem to the Dealership's attention. (Pl. Dep. at 24–27, 37–38.) With respect to the alleged electrical problem, Plaintiff concedes the car does not "suffer from any 'electrical' problems separate and apart from the problems she alleges about the radio." (DSMF ¶¶ 6–7; Resp. to DSMF ¶¶ 6–7.) Thus, the focus of Plaintiff's claims is the alleged problem with the car's radio. Robert Gerlach, an Mercedes–Benz Technical Specialist, testified that the alleged problem with the radio in Plaintiff's car would be resolved by replacing or updating the audio gateway described in an April 7, 2004 Star Bulletin published by MBUSA. (DSMF ¶ 13.)

From June 17, 2003, to January 26, 2004, Plaintiff took the car to the dealership for repairs on six (6) occasions. (Resp. to Mot. for Summ. J. [20] at 2; Pl.'s Statement of Material Facts ("PSMF") [22] ¶ 6.) She did not pay for any of the work performed on the car when it was serviced. (DSMF ¶ 9.) On May 24, 2004, the car hesitated on acceleration. The invoice for this visit indicates the dealership diagnosed the cause of this hesitation and addressed it. (First Supplemental Resp. to Mot. for Summ. J. [23], Ex. J.) There is no evidence the car was ever returned to the dealership to address this same problem or that it reoccurred. Because this problem does not appear to be the basis of Plaintiff's claims, and because it was mentioned for the first time in her affidavit in opposition to MBUSA's motion, the Court concludes Plaintiff does not rely on the acceleration problem in this case. The Court further finds, based on Plaintiff's affidavit and her deposition testimony, that the only problem that Plaintiff maintains still is an issue with the car is the intermittent radio malfunction problem.

---

1. The warranty period was 48 months or 50,-000 miles, from the earlier of (i) the vehicle delivery date, or (ii) the date when the car was placed in service.

2. Plaintiff submitted an affidavit in opposition to MBUSA's Motion for Summary Judgment. In the concluding paragraph of her affidavit, she states "the vehicle is still not driving correctly because it hesitates and jerks whenever I accelerate." (Affidavit of Betty Fedrick ("Pl.Aff."), attached to Pl.'s Second Supplemental Resp. to Mot. for Summ. J. [24], ¶ 26.) This hesitation problem is not alleged in the Complaint nor is it discussed in Plaintiff's briefs filed in connection with MBUSA's summary judgment motion. The Court notes Plaintiff brought the car to the Dealership on August 16, 2004, and advised the Dealership

Plaintiff took the vehicle for the dealership for an expert vehicle inspection. (*Id.* at ¶ 11.) During a thorough inspection and test drive, Mr. Gerlach did not observe the alleged radio defect. (*Id.*) According to his report, the car functioned normally and had no problems. (*Id.*) Plaintiff brought her car to the Dealership on June 15, 2004, claiming again that her radio was intermittently inoperable. (*Id.* at ¶ 14.) The Dealership performed the repair to the radio described in the April 7, 2004 Star Bulletin. (DSMF ¶ 15.)

Following the June 15, 2004 repair, Plaintiff returned the car to the Dealership only once. That occasion was on August 16, 2004. (Resp. to Mot. for Summ. J., Ex. J.) The following work was performed on the car: the brake pads were replaced, an engine hesitation problem was addressed, and a quality control inspection was performed. (*Id.*) Plaintiff did not complain about the radio during this visit. (*Id.*)[3]

Plaintiff admits that, since its purchase in January 2003, she drives the car "on a daily basis" and that the vehicle provides safe and reliable transportation. (DSMF ¶ 8.) In the first one and one-half years she owned the car, she drove it over 31,000 miles. (*Id.* at ¶ 9.)

### B. Procedural History

Plaintiff filed her Complaint on November 2, 2003.[4] She alleges her car is defective and asserts claims for breach of express and implied warranties under Georgia law, as well as revocation of acceptance under Georgia law and the Magnuson–Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* She seeks damages and attorney's fees. The parties proceeded through discovery and, on July 26, 2004, MBUSA filed its Motion for Summary Judgment and Memorandum of Law in Support ("Mot. for Summ. J.") [16]. Plaintiff filed her response in opposition to MBUSA's motion on August 19, 2004 ("Resp. to Mot. for Summ. J.") [20],[5] and MBUSA replied on September 7, 2004[27].

## II. DISCUSSION

### A. The Parties' Non–Dispositive Motions[6]

#### 1. MBUSA's Motion to Exclude the Expert Witness Testimony of John Taylor

■ MBUSA moves the Court to exclude the expert witness testimony of John Taylor because (1) Plaintiff failed to timely designate Mr. Taylor as an expert witness, and (2) Plaintiff's untimely designation failed to meet the requirements of Rule 26 of the Federal Rules of Civil Procedure. (Mot. to Exclude at 4.) Plaintiff does not refute that her designation of Mr. Taylor was untimely and deficient, but alleges exclusion of his testimony is unwarranted because MBUSA has failed to show it was prejudiced by the untimely and deficient designation. (Resp. to Mot. to Exclude at 1.)

---

3. Plaintiff in her affidavit states that the "radio and CD continue to malfunction." (Pl. Aff.¶ 26.) Her affidavit was executed on August 18, 2004.

4. This case originally was filed in the Superior Court of Fulton County. It was removed to this Court on December 5, 2003.

5. Plaintiff supplemented her response in opposition to summary judgment on August 20, 2004[23] ("First Supplemental Resp. to Mot. for Summ. J."), and August 26, 2004[24] ("Second Supplemental Resp. to Mot. for Summ. J.").

6. MBUSA's Motion to Strike Portions of Plaintiff's Affidavit, and Plaintiff's arguments in opposition thereto, are discussed in connection with Defendant's Motion for Summary Judgment. *See* Section II.B.5, *infra.*

The requirements of Local Rule 26.2(C) with respect to the timing of expert witness designations are straightforward. The rule provides:

Any party who desires to use the testimony of an expert witness shall designate the expert sufficiently early in the discovery period to permit the opposing party the opportunity to depose the expert and, if desired, to name its own expert witness sufficiently in advance of the close of discovery so that a similar discovery deposition of the second expert might also be conducted prior to the close of discovery.

Any party who does not comply with the provisions of the foregoing paragraph shall not be permitted to offer the testimony of the party's expert, unless expressly authorized by court order based upon a showing that the failure to comply was justified.

L.R. 26.2(C), N.D.Ga. *See generally Gainor v. Douglas County, Ga.*, 59 F.Supp.2d 1259, 1296–97 (N.D.Ga.1998) (excluding expert testimony pursuant to Local Rule 26.2(C) where party "clearly failed to comply with [the Local Rule] by not making [its expert] available to be deposed sufficiently early in discovery so that defendants could decide whether they wishes to retain a counter-expert, allow that expert to prepare his expert report, and make that expert available for deposition within the discovery period.").

Discovery in this case closed on July 6, 2004. MBUSA's motion for summary judgment was filed on July 26, 2004. Plaintiff did not identify Mr. Taylor as an expert witness until September 27, 2004, more than two and one-half months after the close of discovery and two months after MBUSA's summary judgment motion.[7] This designation was not made sufficiently early in the discovery period to permit MBUSA the opportunity to depose Mr. Taylor and, if desired, to name its own expert witness sufficiently in advance of the close of discovery so that a similar discovery deposition of the second expert might also be conducted prior to the close of discovery. Accordingly, Plaintiff's designation of Mr. Taylor failed to comply with the requirements of Local Rule 26.2(C).

Plaintiff's designation also failed to comply with the parties' agreement regarding the timing of expert witness designations. The parties in their Joint Preliminary Report and Discovery Plan set out a specific schedule for the disclosure of expert witnesses. (Joint Preliminary Report [5] at ¶ 11.) Included in this schedule was the requirement that "Plaintiff shall identify and disclose in accordance with Fed. R.Civ.P. 26(a)(2) all experts who will testify at trial on or before April 5, 2004." (*Id.*) The parties' schedule was adopted as an order of this Court on January 14, 2004[6]. Plaintiff did not identify Mr. Taylor as an expert witness until September 27, 2004, more than five (5) months after the Court-ordered deadline.

Finally, Plaintiff's expert-witness designation failed to comply with the requirements of Rule 26 regarding the content of an expert report. Rule 26 requires a party's expert witness disclosure to be accompanied by written report prepared and signed by the witness. Fed.R.Civ.P.

---

7. Plaintiff also apparently filed the expert-witness designation in the wrong court. The case caption of the designation served to counsel for MBUSA bears the heading and case number used in the Fulton County Superior Court before the case was removed to this Court in November 2004, and Plaintiff in her original designation states the designation is being made pursuant to O.C.G.A. § 9–11–26 rather than Rule 26. (Mot. to Exclude, Ex. 2.)

26(a)(2)(B). The expert report must include, among other things, "any exhibits to be used as a summary of or support for the opinions; . . . the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years." *Id.* The expert report attached to Plaintiff's expert witness designation did not include the exhibits used to support Mr. Taylor's opinion, the compensation he was paid for his study and testimony, or a listing of any other cases in which he has testified at trial or deposition in the preceding four years.

Plaintiff admits her designation of Mr. Taylor was untimely and did not comply with Rule 26. (Resp. to Mot. to Exclude at 2.) Except for her vague allegation that "Mr. Taylor was disclosed to [MBUSA] at the earliest possible time by the Plaintiff," she offers no justification for her failure to comply with the requirements of Local Rule 26.2 or Rule 26. (Resp. to Mot. to Exclude at 1.) She argues the exclusion of Mr. Taylor is unwarranted, however, because MBUSA has not demonstrated the untimely and insufficient designation resulted in material prejudice to MBUSA. (*Id.* at 1–2.) This argument is without merit. Where a party fails to comply with Local Rule 26.2(C) in designating its expert witness, the party "shall not be permitted to offer the testimony of [its] expert, *unless expressly authorized by court order based upon a showing that the failure to comply was justified.*" L.R. 26.2(C), N.D.Ga. (emphasis added). The rule clearly provides Plaintiff must demonstrate her failure to comply was justified to avoid the exclusion of her expert witness. Because Plaintiff has failed to do so here, MBUSA's Motion to Exclude the Expert Witness Testimony of John Taylor is GRANTED.

## 2. *Plaintiff's Motion for Leave to File Disclosure of Expert Testimony*

■ Plaintiff moves for leave to file an expert witness disclosure identifying Danny Candler as an expert witness in this case. (Mot. for Leave to File Disclosure at 2–4.) Plaintiff does not dispute her designation of Mr. Candler is untimely, since the proposed designation comes more than eight (8) months after the Court-ordered deadline for expert witness disclosures in this case. She argues the Court should permit this untimely designation because she was unaware the expert testimony to be offered by Mr. Candler was necessary until the Georgia Court of Appeals' decision in *Monroe v. Hyundai Motor Am., Inc.,* 270 Ga.App. 477, 606 S.E.2d 894 (2004). The *Monroe* decision was issued in November 2004, after the close of discovery and the filing of dispositive motions in this case.

In *Monroe,* the Georgia Court of Appeals addressed whether the plaintiff's opinion testimony concerning the value of the allegedly defective car at the time of purchase was competent evidence of damages sufficient to survive summary judgment. *Monroe,* 606 S.E.2d at 896–97. The court held the plaintiff's testimony was not competent evidence of damages and affirmed the trial court's grant of summary judgment to the defendant based on the plaintiff's failure to present evidence of damages. *Id.* The court reasoned that "opinion evidence as to the value of an item, in order to have probative value, must be based upon a foundation that the witness has some knowledge, experience or familiarity with the value of the property or similar property and he must give reasons for the value assessed and also must have had an opportunity for forming a correct opinion." *Id.* at 896 (quoting *Dixon v. Williams,* 177 Ga.App. 702, 340 S.E.2d 286 (1986)). Although the plaintiff

in *Monroe* testified he was familiar with purchasing vehicles and had researched comparable car makes and models before purchasing the car at issue, the court held this was insufficient to show his opinion testimony had probative value. *Monroe*, 606 S.E.2d at 896–97.

Plaintiff contends that, before *Monroe* was handed down, she believed her testimony concerning valuation was sufficient to defeat summary judgment on the issue of damages. (Mot. for Leave to File Disclosure at 2–3.) Based on this belief, she did not obtain expert testimony regarding valuation. She argues she should be permitted to submit such testimony in opposition to summary judgment now because *Monroe* substantially altered the landscape in this area of law. (*Id.*)

This argument is not persuasive. First, *Monroe* does not establish new law. The court in *Monroe* applied well-established principles governing the competency of opinion testimony to the plaintiff's testimony regarding the value of his allegedly defective car. It did not purport to adopt a new standard for evaluating such testimony, nor did it overrule any previous decisions relating to opinion testimony. In fact, the court discussed with approval previous Georgia Court of Appeals' decisions in which a plaintiff car owner's testimony was found to be sufficient to withstand summary judgment and harmonized its ruling with these decisions. *Monroe*, 606 S.E.2d at 896–97. Thus, it is clear *Monroe* is not a groundbreaking decision which requires the Court, in fairness, to permit Plaintiff to re-litigate this case. It is simply a recent Georgia Court of Appeals decision involving nearly identical facts which reached a result unfavorable to Plaintiff.

Second, the Court notes that counsel for Plaintiff also represented the plaintiff in *Monroe*. Discovery in the instant case did not close until July 2004. This Court's review of the Georgia Court of Appeals' online docket indicates the trial court in *Monroe* entered summary judgment for the defendant car manufacturer in December 2003, the plaintiff filed his notice of appeal in January 2004, and the parties' appellate briefs were submitted in May and June 2004. *See* http://www.gaap peals.us/docket/ (accessed on March 27, 2005). Thus, Plaintiff, through her counsel, was aware of the *Monroe* trial court's adverse ruling on the opinion testimony issue as early as December 2003, nearly seven months before the close of discovery in this case. In addition, Plaintiff's counsel submitted appellate briefs on this issue while discovery in this case still was ongoing. When Plaintiff nonetheless decided not to retain an expert on valuation, presumably relying on the Georgia Court of Appeals to reverse the trial court in *Monroe*, she did so at her own peril.

Third, Plaintiff's arguments concerning her pre-*Monroe* belief in the sufficiency of her own testimony with respect to valuation are belied by her actions in this case. Plaintiff did retain an expert prior to the *Monroe* decision—Mr. Taylor. According to Mr. Taylor's report, he was retained, in part, to assess the value of Plaintiff's car based on its alleged defects: "The sales contract indicates a vehicle price of $59,220.00. Based on the documents, related TSB's & repeated failure of the audio system, it is my opinion that the vehicle was defective at the time of sale & the sales price should have been $47,376.00." (Mot. to Exclude, Ex. 2.) Thus, at least as early as September 2004, before *Monroe* was issued, Plaintiff implicitly acknowledged the need to offer expert testimony regarding valuation.[8]

8. The Court in this Order excluded Mr. Taylor's testimony because Plaintiff failed to

For these reasons, Plaintiff's request for leave to file her untimely expert witness disclosure of Mr. Candler is DENIED.

### 3. Plaintiff's Motion for Leave to File Additional Evidence of Damages

Plaintiff moves for leave to file the Affidavit of Danny Candler in support of her opposition to MBUSA's motion for summary judgment. Her arguments in favor of this additional evidence duplicate her arguments in support of her request for leave to disclose Mr. Candler as an expert witness. For the reasons set out above with respect to Mr. Candler's untimely designation, Plaintiff's motion for leave to file Mr. Candler's Affidavit is DENIED.

### 4. Plaintiff's Motion for Leave to File a Surreply in Opposition to MBUSA's Motion for Summary Judgment & Plaintiff's Motion for Leave to File a Surreply in Opposition to MBUSA's Motion to Strike

Plaintiff moves the Court for leave to file surreplies in opposition to MBUSA's Motion for Summary Judgment and its Motion to Strike Portions of Plaintiff's Affidavit.[9] With respect to MBUSA's summary judgment motion, Plaintiff argues a surreply is necessary to address unspecified misinterpretations of case law and omissions of material fact by MBUSA in its reply brief. (First Mot. for Leave to File a Surreply at 1.) Her arguments in support of her request to file a surreply in opposition to MBUSA's motion to strike are even more vague: "Plaintiff hereby requests leave to file a supplemental brief in opposition to Defendant's Motion to Strike so that Plaintiff has an opportunity

to address the main issue in Defendant's Reply brief regarding Plaintiff's testimony as to the value of the vehicle and how it is appropriate and proper to analyze said testimony in accord with Georgia state law." (Second Mot. for Leave to File a Surreply at 2.) MBUSA opposes Plaintiff's requests [30, 36].

■ Neither the Federal Rules of Civil Procedure nor this Court's Local Rules authorize the filing of surreplies. *See Byrom v. Delta Family Care—Disability and Survivorship Plan,* 343 F.Supp.2d 1163, 1188 (N.D.Ga.2004). Although the Court may in its discretion permit the filing of a surreply, this discretion should be exercised in favor of allowing a surreply only where a valid reason for such additional briefing exists, such as where the movant raises new arguments in its reply brief. *See, e.g., Hammett v. Am. Bankers Ins. Co.,* 203 F.R.D. 690, 695 n. 1 (S.D.Fla.2001) ("Because Plaintiff presented new arguments and a new theory for certification in her Reply the Court will grant Defendants' Motion for Leave to File a Sur–Reply...."). This Court previously has warned that "[t]o allow such surreplies as a regular practice would put the court in the position of refereeing an endless volley of briefs." *Garrison v. Northeast Georgia Med. Ctr., Inc.,* 66 F.Supp.2d 1336, 1340 (N.D.Ga.1999) (denying party's request for leave to file a surreply).

Plaintiff here filed a full twenty-five (25)-page response to MBUSA's motion for summary judgment and a sixteen (16)-page response to its motion to strike. The Court is apprised of Plaintiff's position, factually and legally, in these matters. Moreover, Plaintiff fails to demonstrate

timely identify him as an expert in this case. *See* Section II.A.1, *supra.*

**9.** Plaintiff attached to her request her proposed surreply brief in opposition to MBU-

SA's motion to strike. Plaintiff did not attach a proposed surreply in opposition to MBUSA's motion for summary judgment.

that a particular argument or representation made by MBUSA in its reply briefs warrants the filing of a surreply. Accordingly, Plaintiff's requests for leave to file surreplies in opposition to MBUSA's motions are DENIED.

### B. MBUSA's Motion for Summary Judgment

#### 1. *Summary Judgment Standard*

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact. *Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1246 (11th Cir.1999). Once the moving party has met this burden, the non-movant must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial. *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir.1999). The non-moving party "need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings." *Id.*

The Court must view all evidence in the light most favorable to the party opposing the motion and must resolve all reasonable doubts in the non-movant's favor. *United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am.*, 894 F.2d 1555, 1558 (11th Cir.1990). "[C]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury...." *Graham*, 193 F.3d at 1282. "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to tri-

al." *Herzog*, 193 F.3d at 1246. But, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment for the moving party is proper. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

In this case, MBUSA has moved for summary judgment. Accordingly, the Court views all evidence and factual inferences in the light most favorable to Plaintiff in considering MBUSA's summary judgment motion.

#### 2. *Plaintiff's Claim for Breach of Express Warranty*

█ Plaintiff's car is subject to an express warranty which limits MBUSA's liability to the repair or replacement of defective parts or workmanship. In Georgia,

[w]here ... an automobile is purchased under warranty, express or implied, and when the automobile is shown by evidence not to meet the terms of the warranty, and time passes and the defects are not corrected, a plaintiff is entitled to recover such damages as may be reflected by the record.

*George M. Couch, Inc. v. James*, 96 Ga. App. 434, 100 S.E.2d 463, 463 (1957). "It is the refusal to remedy within a reasonable time, or a lack of success in the attempts to remedy which would constitute a breach of warranty." *Patron Aviation, Inc. v. Teledyne Indus., Inc.*, 154 Ga.App. 13, 267 S.E.2d 274, 278 (1980) (quotations omitted); *General Motors Corp. v. Green*, 173 Ga.App. 188, 325 S.E.2d 794, 796 (1984); *McDonald v. Mazda Motors of Am., Inc.*, 269 Ga.App. 62, 603 S.E.2d 456 (2004) ("When the purchaser returns the product to the dealer and makes the product available for repair, refusal to repair, unsuccessful repair, or repeated failures of

the repair constitute a breach of the express warranty.").

■ Plaintiff claims MBUSA's motion for summary judgment should be denied because genuine issues of material fact exist regarding whether repairs to the car were made and, if so, whether such repairs were made within a reasonable time and within a reasonable number of attempts. (Resp. to Mot. for Summ. J. at 6–9.) Plaintiff argues that it is for a jury to determine whether it took MBUSA too long and too many attempts to repair the car's alleged air conditioner and radio malfunctions. (*Id.*)

Plaintiff's argument ignores the facts of this case. Plaintiff alleges that soon after she purchased the car she experienced problems with the air conditioner and that the radio was intermittently inoperable. According to the repair invoices and the summary of repairs Plaintiff submitted in connection with her opposition to MBUSA's motion, the air conditioner issue was corrected on the first visit in which it was brought to the Dealership's attention. (Resp. to Mot. for Summ. J., Exs. D–I.)

The record further demonstrates Plaintiff advised the Dealership of the intermittent radio malfunction and the problem was addressed on approximately five (5) separate occasions. Plaintiff complained to the Dealership about the radio malfunction on June 15, 2004. On that day, the Dealership performed the repair the man-

ufacturer had described in an April 7, 2004 bulletin providing technical guidance for correcting problems like the one identified by Plaintiff. There is no evidence Plaintiff complained to the Dealership about the problem following this repair. (Resp. to DSMF ¶¶ 15–16.) Tellingly, when Plaintiff brought the car to the Dealership on August 16, 2004, she requested only that (i) the brake pads be replaced, (ii) an engine hesitation problem be addressed, and (iii) a quality control inspection be performed. (First Supplemental Resp. to Mot. for Summ J., Ex. J.) She did not identify any continuing problems with the radio and she has not submitted any repair invoices indicating she informed the Dealership of any continued radio malfunction after the June 15, 2004 repair was performed.[10]

In short, the facts here are that the two "defects" about which Plaintiff complains were raised and addressed by the Dealership from which Plaintiff purchased the car. The facts further are that both of these issues were resolved within, at the most, six (6) months after she purchased the car and within six (6) visits to the dealership.[11] The Court finds that, on the facts presented here, no reasonable juror could conclude that the period of time over which these problems were addressed by the Dealership, or the number of times the Dealership attempted to repair these problems, was unreasonable. Accordingly, the Court finds meritorious MBUSA's motion

**10.** The *only* evidence the problem allegedly existed after June 15, 2004, is a single line in Plaintiff's Affidavit wherein she states: "Also, the radio and CD player continued to malfunction." She does not specify the "malfunction," or indicate she notified the Dealership of the malfunction following the June 15, 2004 repair. Even it the Court had determined it was appropriate to consider the affidavit of Danny Candler (submitted by Plaintiff in support of her opposition to MBUSA's motion for summary judgment) it is interesting that Mr. Chandler does not clearly identify the

intermittent operation of the radio as an existing defect.

**11.** The Court notes that during these visits Plaintiff also brought to the Dealership's attention other minor matters that are typical of new cars and that she had routine maintenance performed on the car. (Resp. to Mot. for Summ. J., Exs. E–K.) These repairs and routine maintenance are not the basis of her claims.

for summary judgment on Plaintiff's breach of express warranty claim.[12]

### 3. *Plaintiff's Claim for Breach of Implied Warranty*

■ Plaintiff next asserts a claim for breach of an implied warranty of merchantability. (Resp. to Mot. for Summ. J. at 13.) She contends the car as delivered had pre-existing defects in the air conditioner and the radio. *Id.* She argues the fact she had to bring the car in several times over the first several months of ownership to address these problems rendered the car unmerchantable.[13] Other than the previously discussed evidence regarding her visits to the Dealership for these two problems, Plaintiff provides no further evidence to support her claim for breach of an implied warranty. Taking the record as a whole and viewing all the evidence in the light most favorable to Plaintiff, the Court finds that no reasonable juror could find for Plaintiff on her claim for the breach of an implied warranty. *See Horne v. Claude Ray Ford Sales, Inc.*, 162 Ga. App. 329, 290 S.E.2d 497, 499 (1982) ("There was no evidence of any breach of the implied warranties of merchantability or fitness for particular purpose, as the plaintiff admitted that the damage . . . had not affected the car's usefulness or its

driveability."). Accordingly, summary judgment on this claim is warranted.[14]

### 4. *Plaintiff's Claim for Revocation of Acceptance*

■ Based on the Court's determination that the evidence does not support claims for breach of express or implied warranties, Plaintiff's claim for revocation also fails. Furthermore, revocation of a sale requires privity of contract and thus can be asserted only against a seller. O.C.G.A. § 11–2–608; *Sofet v. Roberts*, 185 Ga.App. 451, 364 S.E.2d 595, 596–97 (1987). Because it is undisputed the Dealership, rather than MBUSA, was the seller here, summary judgment on Plaintiff's revocation claim is appropriate for this additional reason.

### 5. *Plaintiff's Evidence of Damages*

■ MBUSA argues summary judgment on Plaintiff's breach-of-warranty and revocation claims also is appropriate because Plaintiff has failed to present any competent evidence of damages. A plaintiff in a warranty case must show the difference between the fair market value of the vehicle as warranted and its fair market value as delivered in the allegedly defective condition. *Fiat Auto USA, Inc. v. Hollums*, 185 Ga.App. 113, 363 S.E.2d 312, 315 (1987); *Chrysler Corp. v. Mari-*

---

**12.** To the extent Plaintiff claims she has a valid cause of action for breach of warranty based on the mere existence of the air conditioner and radio problems, this claim ignores that the warranty did not promise a defect-free car, only that any defect would be repaired or the defective part replaced. Here, no reasonable juror could conclude the alleged defects were not cured with a reasonable time or a reasonable number of attempts.

**13.** She makes this claim despite that she used the car daily and put over 31,000 miles on it in the first one and one-half years of ownership.

**14.** Plaintiff also seeks damages under the Magnuson–Moss Warranty Act. The Act does not provide an independent cause of action for state law claims, only additional damages for breaches of warranty under state law. *Walsh v. Ford Motor, Co.*, 807 F.2d 1000, 1016 (D.C.Cir.1986); *Dildine v. Town & Country Truck Sales, Inc.*, 259 Ga.App. 732, 577 S.E.2d 882, 884 (2003) ("To recover [under the Warranty Act], . . . [the plaintiff] must show that [the defendant] breached the implied warranty of merchantability arising under Georgia law."). Absent viable breach of warranty claims, Plaintiff's claim for damages under the Warranty Act also fails.

*nari,* 177 Ga.App. 304, 339 S.E.2d 343, 345 (1985). Warranty damage evidence must be competent. *Colonial Pipeline Co. v. Williams,* 206 Ga.App. 303, 425 S.E.2d 380, 382 (1992). Failure to present competent evidence of damages entitles a defendant to summary judgment. *Dixon Dairy Farms, Inc. v. Conagra Feed Co.,* 245 Ga. App. 836, 538 S.E.2d 897, 899 (2000).

■ Plaintiff has not presented competent evidence of damages in this case. She has not paid for repairs and has not had the vehicle appraised or otherwise valued the vehicle in its allegedly defective condition. The only evidence she presents is her testimony regarding the reduced value of the car as a result of the alleged defects. This testimony is set out in her affidavit in four paragraphs:

I am familiar with purchasing vehicles. I have purchased 6 new vehicles in my lifetime, including 3 new Mercedes–Benz vehicles prior to purchasing the subject vehicle. I bought and sold these vehicles and negotiated that sale with a car dealership.

I am familiar with cars and what they cost to buy. Due to my experience in buying and selling vehicles and the research that I have performed on car pricing, I have become knowledgeable about the values of vehicles.

Prior to purchasing the E320W, I researched the car market to see how much cars were going for at that time. I also looked at other makes of cars, including BMW. I spoke to numerous Mercedes–Benz owners, including family and friends who own Mercedes–Benz vehicles, about the price and condition of their cars. I also did price comparisons and educated myself on the car market. The value of the vehicle on January 6, 2003, was $35,000.00. This is my opinion based on my experience and knowledge of automobiles and their values, as well as my experience buying and selling cars. My opinion is also based on my experience with the E320W, including all of the problems I have witnessed and all of the corrective measures the repair facility attempted to try and fix the problems. I have been intimately involved in all aspects of the E320W, as it was a major investment for myself.

(Pl.Aff.¶¶ 21–24.) The Court finds Plaintiff is not qualified to express this opinion. She is not trained and has no experience in car valuation, the effect of defects on the value of a car, or the general value of cars, defective or not, in the market. Her testimony is based on the fact she has purchased cars for herself in the past, performed some comparative shopping and personal research on cars before purchasing the car at issue, and performed some unspecified research on car pricing. This is not enough.

In *Monroe v. Hyundai Motor America, Inc.,* 270 Ga.App. 477, 606 S.E.2d 894 (2004), the plaintiff brought claims against the defendant car manufacturer for breach of express and implied warranties and revocation of acceptance. In support of his claim for damages, the plaintiff submitted an affidavit in which he stated that

he was "familiar with purchasing vehicles," had purchased at least ten cars, both new and used[,] in his lifetime, and was "familiar with cars and what they cost to buy." [The plaintiff] also testified that before purchasing the [car in question], he "researched the car market to see how much vehicles were going for at that time" and that he "also looked at other comparable makes and models of automobiles." He stated that if he had "known about the defects and nonconformities in this vehicle, [he] would not have paid more than $12,000 for it on" the date of purchase.

*Id.* at 896. The Georgia Court of Appeals rejected the "evidence" submitted in the affidavit and affirmed the trial court's decision to strike from the affidavit the plaintiff's statements relating to valuation. *Id.* In doing so, the Court noted that while the plaintiff had based his opinion on past purchases and his research of the car market, he did not testify his past vehicle purchases included purchases of vehicles with the purported defects or what issue in the case his "research" involved. *Id.* The court determined the plaintiff's testimony concerned the value of the car to him, and not its fair market value as impacted by the alleged defects.

*Monroe* is instructive here. Plaintiff in this case has offered her personal opinion on the car's value based on her personal experience buying cars, including the car at issue, and some unspecified research on car values.[15] She does not have any training or experience in car valuations, demonstrates no knowledge of or familiarity with the factors that impact car value, and failed to provide any information or analysis showing she had experience valuing cars with the kind of defects she alleges here or otherwise researched the effect of such defects on car values. In sum, her affidavit testimony fails to provide competent evidence of damages in this case.[1617]

On December 20, 2004, Plaintiff moved for leave to submit the affidavit of Danny Candler, an automotive technician specializing in Volkswagen automobiles. As discussed in Section II.A.2, *supra,* Plaintiff's request is denied and Mr. Candler's affidavit will not be considered in deciding MBUSA's motion for summary judgment. Even if the Court permitted Plaintiff to submit Mr. Candler's affidavit, summary judgment still is appropriate.

Mr. Candler has experience in making valuation recommendations to Volkswagen based on repair history of vehicles. He has repaired, provided written estimates for, performed inspections of and analyzed defects on new and used vehicles, including those manufactured by MBUSA. In his affidavit, Mr. Candler testifies he is aware of resources and methods to determine how the condition and repair history affects an automobile's value. While he has preformed valuation and appraisals for automobile dealerships, he does not state that he has ever valued or appraised a Mercedes–Benz vehicle or evaluated the effect on value of radio and air conditioner problems like the ones at issue here. The Court is doubtful Mr. Candler's background and experience are sufficient to qualify him to express the opinions offered.

█ Assuming, however, he is qualified, his testimony does not provide competent evidence of damages. Plaintiff's duty here is to present evidence of the damages to the car that resulted from the defects she alleges—the air conditioner

---

15. The similarities between the affidavit testimony of the plaintiff in *Monroe* and Plaintiff here are not coincidental. As noted above, Plaintiff is represented by the same counsel as the plaintiff in *Monroe.*

16. MBUSA has moved to strike those portions of Plaintiff's affidavit in which she offers testimony on the value of her car. Based on the discussion above, the motion is GRANTED IN PART and DENIED IN PART. Although the Court denies MBUSA's request for the Court to strike these paragraphs from Plaintiff's affidavit, the Court will not consider this testimony in assessing Plaintiff's evidence of damages.

17. Plaintiff essentially concedes this case is subject to summary adjudication without competent evidence regarding damages. (*See* Mot. for Leave to File Additional Evidence at ¶ 6 ("Plaintiff asks the Court to utilize its discretion [to admit Mr. Candler's Affidavit] so that Plaintiff may have the opportunity to save her case from being summarily dismissed.").)

problem and the intermittent radio malfunction. Mr. Candler's testimony does not provide evidence of any diminution in value resulting from either or both of these alleged defects. According to his affidavit, Mr. Candler simply reviewed the history of all the issues mentioned by Plaintiff when she took her car to the Dealership and then reaches a general valuation conclusion based on the overall history he reviewed. That value is not relevant here. In this case, Plaintiff alleges she is entitled to damages based on the diminution in her car's value as a result of two defects—the air conditioner problem and the intermittent radio malfunction. Mr. Candler does not express any opinion on the effect of these two alleged defects on the car's value, either separately or in combination. Accordingly, Plaintiff, even with the Candler Affidavit, fails to present competent evidence of damages resulting from the defects at issue here. Because Plaintiff fails to present such evidence, MBUSA's Motion for Summary Judgment must be granted.[18]

### III. CONCLUSION

For the reasons stated above,

**IT IS HEREBY ORDERED** that MBUSA's Motion to Strike Portions of Plaintiff's Affidavit is **GRANTED IN PART** and **DENIED IN PART** as set out above.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to File a Surreply in Opposition to MBUSA's Motion for Summary Judgment and Plaintiff's Motion for Leave to File a Surreply in Opposition to MBUSA's Motion to Strike are **DENIED.**

**IT IS FURTHER ORDERED** that MBUSA's Motion to Exclude the Expert Witness Testimony of John Taylor is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to File Expert Witness Disclosure of Danny Candler and Plaintiff's Motion for Leave to File Additional Evidence of Damages are **DENIED. IT IS FURTHER ORDERED** that MBUSA's Motion for Summary Judgment is **GRANTED** and the Clerk of Court is **DIRECTED** to enter judgment in favor of MBUSA against Plaintiff.

---

18. The evidence is compelling that the air conditioner problem cannot be grounds for a breach of warranty. It was repaired the first time it was brought to the attention of the Dealership and MBUSA met its obligations under the warranty. Even assuming the intermittent radio malfunction was actionable, Mr. Candler was obligated to testify as to the effect of this alleged defect on the value of the car. He failed to do so, electing instead to testify regarding the effect of the car's general repair history on its value.